# IN THE UNITED STATES DISTRICT COURT FOR THE
# SOUTHERN DISTRICT OF TEXAS
# GALVESTON DIVISION

| | | |
|---|---|---|
| STEVE BURK AND MAGGIE BURK, | § | |
| *Plaintiffs,* | § | |
| | § | |
| | § | |
| v. | § | CIVIL CASE NO. _____ |
| | § | |
| | § | |
| FEDERAL EMERGENCY | § | |
| MANAGEMENT AGENCY, | § | |
| *Defendant* | § | |

## PLAINTIFFS' ORIGINAL COMPLAINT

MAY IT PLEASE THE COURT:

Through the undersigned attorney comes STEVE BURK AND MAGGIE BURK, who, for the following reasons, bring the instant complaint against the FEDERAL EMERGENCY MANAGEMENT AGENCY and state as follows:

### I. NATURE OF THE ACTION

1. This is a civil complaint by Steve Burk and Maggie Burk (hereinafter "Plaintiffs") against their insurer, the Federal Emergency Management Agency (hereinafter "FEMA") to enforce their rights under a flood insurance policy issued by FEMA.

2. On August 27, 2017, Hurricane Harvey caused flood damage and loss to Plaintiffs' residential property in Liverpool, Texas. Plaintiffs has submitted a claim under their policy issued by FEMA, but FEMA has refused to fully pay Plaintiffs' claim.

1

## II.   THE PARTIES

3. Plaintiffs are Texas residents who reside at 2812 Pearl Street, Liverpool, Texas 77577.

4. FEMA is a federal agency headquartered in Washington, D.C. FEMA manages the National Flood Insurance Program (hereinafter "NFIP"). The NFIP issues flood insurance policies to property owners in the United States. 44 C.F.R. § 62.22(b) requires service to multiple persons when filing suit against FEMA. The following persons must be served:

   a. Ryan K. Patrick, United States Attorney for the Southern District of Texas, who may be served at: U.S. Attorney's Office Southern District of Texas, 1000 Louisiana, Ste. 2300, Houston, TX 77002

   b. William Barr, Attorney General of the United States, who may be served at: U.S. Department of Justice, 950 Pennsylvania Avenue, NW, Washington, DC 20530-0001

   c. Pete T. Gaynor, Acting Administrator of FEMA, who may be served at: Federal Emergency Management Agency, 500 C Street S.W., Washington, D.C. 20472

Issuance of summons is requested at this time.

## III.   JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over the claims in this action as they arise pursuant to a claim under a Standard Flood Insurance Policy (hereinafter referred to as "SFIP"). Any claims under a SFIP are governed solely by federal law pursuant to Article IX of the SFIP.[1]

---

[1] *See* 44 C.F.R. Pt. 61, App. A(1), Art. IX.

Therefore, Plaintiffs assert that there is federal question jurisdiction pursuant to *28 U.S.C. § 1331* as this matter requires interpretation of, and the resolution of the case is dependent upon, interpretation and application of federal laws, rules and regulations including the SFIP, itself codified and found at 44 C.F.R. Pt. 61, App. A (1), and the Appropriations, Supremacy and Commerce Clauses of the U.S. Constitution. Furthermore, jurisdiction exists pursuant to the grant of "original exclusive" jurisdiction found in *42 U.S.C. § 4072* as it involves a breach of contract claim under a SFIP.

6.  As more fully explained below, the action involves a contract to insure Plaintiffs' residential property located at 2812 Pearl Street, Liverpool, Texas 77577, against flood damage. The contract for flood insurance was made in Liverpool, Texas, was to be performed there, involves residential property located there, and all of the events or omissions giving rise to the claims asserted in this complaint arose there, so venue for this action lies in this court under Art. VII.R of 44 C.F.R. Pt. 61, App. A(1). The federal courts have exclusive jurisdiction over causes of action arising under the National Flood Insurance Program.[2] Consequently, Section VII, Subsection R of the SFIP issued by the Federal Emergency Management Association through its National Flood Insurance Program requires that venue be set in the United States District Court of the district in which the insured property was located at the time of loss.

## IV.   FACTS

7.  On August 25th, 2017, Hurricane Harvey made landfall as a Category 4 Hurricane, battering coastal and inland properties with punishing rains and high-speed winds. Over the next several days, Hurricane Harvey dropped torrential rainfall across southeast Texas and the Houston

---

[2] *See* Art. VII.R of 44 C.F.R. Pt. 61, App. A(1).

area, with some areas receiving up to 56 inches of rain.[3] Harvey floodwaters inundated homes and properties with water contaminated with high levels of E. coli, likely due to the overflow from flooded wastewater treatment plants.[4] This toxic water remained inside some Texas properties for many days. In its aftermath, Harvey has been hailed as one of the worst weather disasters in history.

8. Plaintiffs' Property, located at 2812 Pearl Street, Liverpool, Texas 77577, was no exception to the area-wide devastation. Toxic water flooded Plaintiffs' primary residence, destroying or damaging significant portions of Plaintiffs' Property. Moisture saturation and contamination from prolonged duration and exposure of flood water necessitated extensive repairs to, among other things, the insulation, sheathing, underlayment, flooring, baseboards, cabinetry, countertops, plumbing, and the air conditioning system.

9. At the time of Hurricane Harvey's impact, Plaintiffs' residential property, located in Liverpool, Texas, was insured under FEMA Flood Insurance Policy no. 4000814174 (hereinafter "FEMA Policy"). The FEMA Policy provided coverage for flood damage to Plaintiffs' residential property and was effective for the period of February 9, 2017, to February 9, 2018.

10. The FEMA Policy provided one hundred fifty thousand dollars ($150,000) in coverage for Plaintiffs' building and sixty dollars ($60,000) in coverage for Plaintiffs' contents for a total of two hundred ten thousand dollars ($210,000) in coverage. The FEMA Policy had a combined deductible of two thousand five hundred dollars ($2,500) for building and contents coverages. The Gross Annual Premium for the FEMA Policy was three hundred eighty nine dollars ($389). Plaintiffs timely paid the premium for the FEMA Policy.

---

[3] National Weather Service, "Hurricane Harvey Info," https://www.weather.gov/hgx/hurricaneharvey .
[4] Rice University, "Harvey samples saddled with antibiotic-resistant genes," http://news.rice.edu/2018/07/25/harvey-samples-saddled-with-antibiotic-resistant-genes-2/ .

11.     The flood damage to Plaintiffs' property sustained during Hurricane Harvey is a covered loss under the FEMA Policy.

12.     Plaintiffs reported the losses and damages to FEMA in a timely fashion and properly discharged the reporting obligations under the FEMA Policy. Plaintiffs cooperated fully with the claim investigation and properly submitted all required documents.

13.     On or about September 22, 2017, an estimate of loss was completed by FEMA's adjuster Timothy Haggerty.[5] Haggerty's cursory inspection resulted in an estimate that was insufficient to cover the full and adequate cost of necessary, covered repairs. Most damage was omitted and the damage that was included was incompletely recorded or undervalued.

14.     Haggerty only assessed damage to the building's crawlspace and A/C system. In the crawlspace, Haggerty failed to call for the replacement of the under floor insulation, which had been submerged in flood waters. Haggerty's inspection completely failed to record any of the flood damage to the insulation, sheathing, underlayment, flooring, baseboards, cabinetry, countertops, and plumbing.

15.     Haggerty estimated the actual cash value of the building damage to be twenty thousand four hundred forty three dollars and thirty-eight cents ($20,443.38), minus a deductible of one thousand two hundred fifty dollars ($1,250), for a total of nineteen thousand one hundred ninety three dollars and thirty-eight cents ($19,193.38).[6] FEMA issued payment to Plaintiffs for nineteen thousand one hundred ninety three dollars and thirty-eight cents ($19,193.38).

---

[5] *See* Plaintiff's Exhibit A.
[6] *Id.*

16. On June 11, 2018, Plaintiffs submitted a letter to FEMA wherein Plaintiffs offered to negotiate for payment of their damages.[7] Attached to the letter, Plaintiffs submitted an independent expert's estimate of the damage along with pictorial documentation of the damage to the building.[8] The independent expert's report revealed the true extent of Plaintiffs' property damage. The expert determined that Plaintiffs' flooring throughout the property was damaged, and required replacement, along with underlayment. The expert also found that baseboards and plumbing fixtures must be replaced in multiple rooms, and that the kitchen required extensive repairs. Together with these and other damages, the expert report valued Plaintiffs' covered losses at one hundred twenty-five thousand five hundred seven dollars and ninety-nine cents ($125,507.99).[9]

17. Since Plaintiffs initiated the claims process, Plaintiffs has provided FEMA access to the insured property, has provided all requested and available information to FEMA that is available, has submitted a revised proof of loss, and has otherwise properly discharged the obligation to cooperate with FEMA in its investigation and adjustment of the flood damage sustained by Plaintiffs.

18. Both parties have had the property inspected by engineers; first, FEMA's inspection was performed by Donan Engineering Co., Inc., then Plaintiffs' report was performed by CASA Engineering, LLC. Donan concluded that the water had risen to 30 inches, not high enough to damage Plaintiffs' flooring and subfloors. Donan concluded that the damage was due to condensation over a period of years, and not flooding from Harvey.[10] CASA in addition to inspecting the property, reviewed Donan's report. CASA found that the flood waters rose to 38",

---

[7] *See* Plaintiff's Exhibit B.
[8] *Id.*
[9] *Id.*
[10] *See* Plaintiff's Exhibit C.

significantly higher than Donan found, causing damage to the flooring and subfloors throughout the property.[11] CASA also found that Donan's report contained numerous inaccuracies and/or errors, and that the photos in Donan's report showed evidence of the damage that Donan denied existed.[12]

19. Representatives of Plaintiffs and FEMA have discussed the claim and attempted to reach a resolution. To date, however, FEMA has refused to pay the full value of the loss incurred by Plaintiffs.

## V. COUNT I – BREACH OF CONTRACT

20. Plaintiffs reasserts and incorporates by reference each of the allegations contained in the foregoing paragraphs.

21. Plaintiffs and FEMA entered into a valid binding contract for flood insurance. FEMA agreed to pay Plaintiffs up to two hundred ten thousand dollars ($210,000) for the building on Plaintiffs' property for damages caused by flooding. Plaintiffs agreed to and did pay a premium in consideration for the insurance contract.

22. Plaintiffs has performed all conditions precedent under the FEMA Policy.

23. FEMA breached its contract with Plaintiffs when FEMA failed to properly adjust and pay Plaintiffs for the full amount of flood damage to the insured building owed under the policy.

24. FEMA unjustifiably failed and/or refused to perform its obligations under the Policy and wrongfully denied or unfairly limited payment on the Plaintiffs' claim.

---

[11] *See* Plaintiff's Exhibit D.
[12] *Id.*

25. Plaintiffs' breach of contract claims are expressly authorized by *42 U.S.C. § 4053* and/or *42 U.S.C. § 4072*.

26. FEMA violated the National Flood Insurance Act ("NFIA"), flood insurance rules and regulations, and Federal common law by, among other things:

   a. Failing to fairly and timely adjust and pay on the flood claim at issue;

   b. Failing to properly train and supervise its adjusters, claims examiners, representatives and agents;

   c. Failing to honor Plaintiffs' satisfactory proof of loss;

   d. Failing to provide its adjusters, claims examiners, representatives and agents with proper and uniform materials with which to evaluate claims;

   e. Failing to take into account the shortage of labor and contractors following Hurricane Harvey;

   f. Failing to take into account for the increase in labor, materials, costs, and time in evaluating Plaintiffs' claim; and

   g. Failing to inform the Plaintiffs of flood policy limitations and exclusions.

*See* 44 C.F.R. Pt. 61, App. A(1), SFIP, Art. I, III, IX.

27. FEMA also breached the contract by failing to perform other obligations it owed under the Policy.

28. As the direct and proximate result of FEMA's breach, Plaintiffs has suffered actual damages within Policy limits.

29.     By virtue of its various breaches of contract, including its failure to fully reimburse Plaintiffs for the covered losses, FEMA is liable to and owes Plaintiffs for the actual and consequential damages sustained as a foreseeable and direct result of the breach, all costs associated with recovering, repairing and/or replacing the covered property, together with all other damages Plaintiffs may prove as allowed by law.

## VI.    PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiffs, STEVE BURK AND MAGGIE BURK, pray that upon judgment hereof, Plaintiffs recover against Defendant, the Federal Emergency Management Agency, sums for breach of contract, including actual and consequential damages as provided by law, all costs of Court on their behalf expended, pre-judgment and post-judgment interest as allowed by law, and any other and further relief, either at law or in equity, to which Plaintiffs may show themselves to be justly entitled.

Dated: June 18, 2019

Respectfully submitted,

By: /s/ **_Martin Arguello_**
Martin Arguello
Federal Bar No. 989880
Texas Bar No. 24064829
arguello@defyoppression.com

**ARGUELLO LAW FIRM**
101 E Little York Road, Ste D
Houston, Texas 77076
Telephone: (281) 884-3960
Facsimile: (281) 884-3961

**COUNSEL FOR PLAINTIFFS**
**STEVE BURK AND MAGGIE BURK**